UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN DUCHIN, et al.,

    Plaintiffs,

v.

EASTERN UPPER PENINSULA
INTERMEDIATE SCHOOL DISTRICT,
et al.,

    Defendants.
_____/

Case No. 2:21-cv-161

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs John and Stacey Duchin sue Defendants on behalf of their disabled minor child. Defendants include: Eastern Upper Peninsula Intermediate School District (EUPISD); Catherine Ryan, a school bus aide employed by EUPISD; Daniel J. Reattoir, retired EUPISD Superintendent; Deanna J. Mayer, current Director of Human Resources; Steve Gordan, retired Director of Human Resources; and Gary G. Hershell, former Director of Transportation for Sault Ste. Marie Area Public Schools. Plaintiffs bring federal claims under 42 U.S.C. § 1983 for violation of constitutional rights, Title II of the Americans with Disabilities Act (ADA), 29 U.S.C. § 504 of the Rehabilitation Act (RA), as well as various state law claims. Before the Court is a motion to dismiss for failure to state a claim and for failure to exhaust administrative remedies pursuant to the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. (ECF No. 24.) This motion is brought by all the defendants except for Defendant Ryan. For the reasons stated below, the Court will grant Defendants' motion.

### I. BACKGROUND

Plaintiffs' Second Amended Complaint ("SAC") states eight causes of action. (2d Am. Compl., ECF No. 17.) Count I states a claim under 42 U.S.C. § 1983 for violation of the Fourth

and Fourteenth Amendments. Counts II and III state claims under the ADA and the RA, respectively. In addition, both claims include allegations of failure to train and deliberate indifference by EUPISD giving rise to liability under § 1983, a *Monell* liability claim. Count IV is a "constitutional tort" claim which is duplicative of Count I. Counts V to VIII are state law claims. Essentially, Plaintiffs' SAC contains four federal claims: (1) 42 U.S.C. § 1983; (2) Title II of the ADA; (3) § 504 of the RA; and (4) Failure to Train or Supervise; and four state law claims: (5) Intentional Infliction of Emotional Distress; (6) Negligence; (7) Negligent Supervision; and (8) Negligent Retention. Defendants move to dismiss all counts.

Plaintiffs bring suit individually and on behalf of their disabled child. Although their child is physically eight years old, she functions at the capacity of a 16-month to 18-month-old. She is non-verbal and deaf or hearing impaired. She has neurological deficits, epilepsy, and loose ligaments that affect her ability to stand or walk. As a special needs student, the child has an Individualized Education Program ("IEP") pursuant to the IDEA. The child's IEP includes special transportation that allows her "to ride the special education bus with lap restraints and adult assistance." (ECF No. 24-2, PageID.312.)

Plaintiffs allege that on July 18th or 19th of 2019, while the child was riding the special education school bus, Defendant Ryan dragged the child by her arms and pulled her off balance, dropped and pushed her against a metal pole, grabbed her backpack, and "verbally assaulted" her. (2d Am. Compl. ¶ 22.) Ryan was later charged with and convicted of fourth degree child abuse. Plaintiffs allege that the child suffered some bruising along with psychological injuries following the incident, such as behavioral changes, "educational regression" relating to the child's potty training, troubled sleep, meltdowns, and trust issues with women. (2d Am. Compl. ¶¶ 39-42.)

## II. STANDARD

"'A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject to dismissal for failure to state a claim.'" *W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 518 (6th Cir. 2016) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007) (affirming district court dismissal for failure to exhaust IDEA administrative remedies)). Failure to exhaust is an affirmative defense. *Id.* (citing *Jones*, 549 U.S. at 216).[1]

A claim may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility

---

[1] Defendants also bring this motion to dismiss under 12(b)(1) for lack of subject matter jurisdiction with regard to Plaintiffs' failure to exhaust. Defendants do not provide support or point to a provision that would indicate that IDEA exhaustion is jurisdictional. Moreover, Sixth Circuit case law indicates that exhaustion is *not* jurisdictional. *See N.S. by and through J.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2017 WL 1347753, at *9 (M.D. Tenn. Apr. 12, 2017); *compare W.R. v. Ohio Health Dep't,* 651 F. App'x 514, 518 (6th Cir. 2016) (treating failure to exhaust as an affirmative defense and non-jurisdictional) *with Gibson v. Forest Hills Local Sch. Dist. Bd. Of Educ.*, 655 F. App'x 423, 430-32 (6th Cir. 2016) (acknowledging past Circuit implication that IDEA's exhaustion requirement is not jurisdictional but not conclusively deciding the issue).

of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). A "'federal court may take judicial notice of proceedings in other courts of record,'" such as bankruptcy courts. *Siner v. City of Detroit*, No. 15-cv-13532, 2017 WL 1190946, at *2 (E.D. Mich. Mar. 30, 2017) (quoting *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

### III. ANALYSIS

#### A. Failure to Exhaust

The IDEA ensures that children with disabilities receive a "free appropriate public education" (FAPE). *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). The IDEA provides relief when a child is denied a FAPE. Section 1415(*l*) of the IDEA addresses how the statute interacts with other laws, such as the Constitution, the ADA, and the RA, in seeking relief.

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C § 1415(*l*). Essentially, § 1415(*l*) requires that "a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only

4

when) her suit 'seek[s] relief that is also available' under the IDEA." *Fry*, 137 S. Ct. at 752. Relief that is available under the IDEA is relief for the denial of a FAPE. *Id.* at 753.

To determine whether a plaintiff seeks relief for the denial of a FAPE, the court is to look to the gravamen of the plaintiff's complaint. *Id.* at 755 ("In effect, § 1415(*l*) treats the plaintiff as 'the master of the claim': She identifies its remedial basis—and is subject to exhaustion or not based on that choice."). Courts can consider a pair of hypothetical questions: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" and (2) "could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* at 756. If the answer to both questions is "yes," the complaint does not allege the denial of a FAPE and exhaustion of administrative procedures under the IDEA is not required. *Id.*

Defendants contend that the gravamen of Plaintiffs' complaint concerns special education services, which would require that Plaintiffs exhaust their administrative remedies under the IDEA prior to filing suit in court. It is undisputed that Plaintiffs have not sought administrative remedies; thus, Defendants argue that the lawsuit must be dismissed.

In Count I, Plaintiffs allege that Ryan violated the child's constitutional rights under the Fourth and Fourteenth Amendments. (2d. Am. Compl. ¶¶ 43-44.) In answering the first hypothetical, Plaintiffs could have brought this claim if the alleged conduct occurred at another public facility. If the child had been yanked around and bruised by a state employee at a public theater or library, Plaintiffs could still bring a § 1983 claim. Similarly, an adult could press essentially the same grievance if that adult was injured at the school in this manner. *See Doe Child by Doe v. Stark Cnty. Cmty. Unit Sch. Dist. #100*, No. 19-1215-MMM, 2019 WL 6702538, at *2 (C.D. Ill. Dec. 9, 2019) (deciding that disabled child need not exhaust administrative procedures

5

because his allegations of abuse by a bus aide did not seek relief from denial of a FAPE). The Supreme Court in *Fry* provided a comparable example:

> [S]uppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. Here too, the suit could be said to relate, in both genesis and effect, to the child's education. But the school districts opine, we think correctly, that the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion. A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

*Id.* at *3 (quoting *Fry*, 137 S. Ct. at 756 n.9). Therefore, it is not necessary for Plaintiffs to exhaust administrative remedies as to their Fourth and Fourteenth Amendment claims.

On the other hand, Plaintiffs' ADA and RA claims contain different allegations. In making these claims, Plaintiffs repeatedly assert that the child was denied access to transportation, was "unable to enjoy the benefits of education," and that Defendants deprived the child "of equal and meaningful access to education." (2d. Am. Compl. ¶¶ 54-60.) These are not claims that Plaintiffs could bring against a public theater or library as those institutions do not have a duty to provide the child with access to education or transportation. Furthermore, an adult would not be able to make these claims either. The manner in which Plaintiffs present their ADA and RA claims essentially put the denial of a FAPE at issue. *See J.L. by and through Leduc v. Wyo. Valley W. Sch. Dist.*, 722 F. App'x 190, 194 (3d Cir. 2018) ("J.L.'s own allegations and claims placed the denial of a FAPE in this central role, and he cannot negate this fact simply by omitting educational redress from his prayer for relief."). Nevertheless, it is not necessary for the Court to decide whether Plaintiffs were required to exhaust their administrative remedies prior to filing these

6

claims because Plaintiffs have not alleged facts sufficient to state viable ADA and RA claims. *See infra* Part B.2.

### B. Failure to State a Claim

#### 1. Section 1983 – Substantive Due Process (Count I)

Plaintiffs bring a § 1983 claim for violation of their child's Fourth and Fourteenth Amendment rights. Though Plaintiffs allege violations of multiple constitutional rights, this is one claim. *Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 784-85 (N.D. Ohio 2020) ("Where plaintiffs have brought both Fourth Amendment excessive force claims and Fourteenth Amendment substantive due process claims, courts have dismissed the Fourth Amendment claims as duplicative.") (citing cases). "Where claims for excessive force have been asserted by public school students against public school employees, the Sixth Circuit, consistent with other circuit courts, has applied the shocks-the-conscience standard to determine whether liability should exist." *Id.* at 784 (citing cases); *see also C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) ("This circuit has generally analyzed claims alleging excessive force by public school officials under the rubric of substantive due process . . . and not the Fourth Amendment"); *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168 (3d Cir. 2001) (applying the Fourteenth Amendment's shocks the conscience standard to federal claims alleging the use of excessive force by public school officials); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (rejecting plaintiffs' argument that the "shocks the conscience" standard does not apply in the excessive-force context).

A substantive due process claim is very different from a claim of assault and battery under state tort law. *Lillard*, 76 F.3d at 725 (citing *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)). "[T]he relevant inquiry is 'whether the force applied caused injury so severe, so disproportionate to the need presented, and was so inspired by malice or sadism rather than a

7

merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience.'" *Domingo v. Kowalski*, 810 F.3d 403, 411 (6th Cir. 2016) (quoting *Webb*, 828 F.2d at 1158). The Sixth Circuit utilizes the Third Circuit's framework in *Gottlieb* in determining whether the conduct of school officials "shocks the conscience," particularly where the claim involves educational techniques:[2]

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

*Domingo*, 810 F.3d at 411 (quoting *Gottlieb*, 272 F.3d at 173). However, even if there is no pedagogical purpose whatsoever, the conduct must still rise to the level of "'brutal' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process." *Lillard*, 76 F.3d at 726 (quoting *Webb*, 828 F.2d at 1158). For example, the Sixth Circuit held in *Lillard* that a single slap without any pedagogical justification was not unconstitutionally excessive, because "it is simply inconceivable that a single slap could shock the conscience." *Id.* Similarly, in *Gottlieb*, the Third Circuit found that a push that allegedly caused chronic back pain and cramping without pedagogical justification was not so brutal and inhumane to constitute a constitutional violation. *Gottlieb*, 272 F.3d at 175.

In contrast, the Sixth Circuit held that the conduct in *Webb* could lead a trier of fact to find that the defendant's actions had no pedagogical justification and were so brutal and inhumane as to shock the conscience. *Webb*, 828 F.2d at 1159. In *Webb*, the plaintiff's principal, broke the

---

[2] Though these factors are more applicable to claims that involve use of force that have some pedagogical justification, *see Doe by Doe v. Livonia Public Schools*, No. 13-cv-11687, 2018 WL 4953086, at *9-13 (E.D. Mich. Oct. 12, 2018) (applying the *Gottlieb* factors to incidences with a pedagogical purpose and applying the *Webb* "brutal and inhumane" standard to an incident without pedagogical purpose), the Third Circuit in *Gottlieb* applied these factors to a claim with no pedagogical justification.

8

door of the bathroom in which the plaintiff was hiding, which knocked her against the wall. *Id.* at 1154. The defendant then thrust the door open again, striking the plaintiff again and throwing her to the floor. He then grabbed her from the floor, threw her against the wall and slapped her. Similarly, most recently in *E.W. v. Detroit Public School District*, the Sixth Circuit upheld the district court's denial of summary judgment and qualified immunity in finding that the facts were most comparable to *Webb*. *E.W. v. Detroit Pub. Sch. Dist.*, No. 20-1790, 2022 WL 837496, at *5 (6th Cir. Mar. 21, 2022). E.W. alleged that the assistant principal of his high school "used excessive force when he forcibly removed E.W. from the school building, threw E.W. to the ground, and pressed his knee into E.W.'s chest." *Id.* at *1. E.W. alleged that he suffered severe shoulder pain that prevented him from raising his arm for several months after the incident as well as psychological harm, "including difficulty trusting . . . men in general, bad dreams, trouble sleeping, and a loss of dignity." *Id.* at *2.

Here, Defendants do not argue that there was any pedagogical reason for Ryan's conduct. Because there is no argument that there was a pedagogical objective, the second question of excessivity is not an issue. *Gottlieb*, 272 F.3d at 174 ("Because we have concluded that there was no need for Carbonara to use force at all, excessivity is simply not an issue.").

The third factor focuses on whether Ryan acted with malicious intent. *Domingo*, 810 F.3d at 414 ("Because a constitutional violation will only arise if [the defendant's] actions were malicious and sadistic, it is the harm, and not the contact, that must be intended."). Plaintiffs do not make any allegations regarding Ryan's intent,[3] and instead argue that the "shocking the

---

[3] Plaintiffs' SAC states that Ryan's actions on the bus led to her conviction of fourth degree child abuse. However, this conviction does not provide any assistance with the question of malicious intent because intent for fourth degree child abuse only requires that the "person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, regardless of whether physical harm result." Mich. Comp. Laws § 750.136b(7)(b).

9

conscience test has been criticized" and that this third factor maintains too high a standard. (Response to Defs.' Mot. to Dismiss, ECF No. 26, PageID.383.) Plaintiffs do not provide any support for this argument.

As to the fourth factor, Plaintiffs allege that the child suffered psychological injuries and some bruising, but do not allege any serious physical injury. The Sixth Circuit noted in *Domingo* that a claim may be substantiated by serious psychological injury, following other circuits that have refused to enact a bright-line rule requiring that substantive due process claims must demonstrate only a serious physical, rather than psychological, injury. *Domingo*, 810 F.3d at 415 (citing *T.W. v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588 (11th Cir. 2010); *Abeyta v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253 (10th Cir. 1996)).

In *T.W.*, the teacher used physical force on T.W. on five separate occasions, with one occasion that had no pedagogical objective, and two occasions that resulted in bruising. *T.W.*, 610 F.3d at 595. T.W. also presented evidence of psychological injury including aggravation of his developmental disability, exacerbation of his behavioral problems and development of post-traumatic stress disorder symptoms. *T.W.*, 610 F.3d at 601. However, the Eleventh Circuit concluded that the teacher's conduct did not support a substantive due process claim even considering T.W.'s psychological injuries. *Id.* at 602. On the other hand, the Sixth Circuit in *E.W.* found that a reasonable jury could find that E.W.'s shoulder injury and his psychological injuries combined could constitute serious injury. Nevertheless, the facts here are more like those in *T.W.*, with no physical injury other than some bruising and allegations of psychological injury. But unlike *T.W.*, Plaintiffs allege only one instance of the use of physical force. Thus, this factor does not weigh in Plaintiffs' favor.

10

Similarly, under the "brutal and inhumane" standard, the conduct alleged in this case is more akin to that in *Lillard* and *Gottlieb*, where the student suffered a slap or a shove, than to that in *Webb* and *E.W.*, where the student was thrown around and battered. *See also Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 680 (6th Cir. 2016) (cataloguing severe instances of force with students with disabilities that did not shock the conscience); *cf. Ross v. Lamberson*, 873 F. Supp. 2d 817, 820 (W.D. Ky. 2012) (cataloguing substantive due process claims that were permitted to proceed to trial due to dramatic physical injuries). The conduct, although likely tortious, does not rise to the level of "a brutal and inhumane abuse of official power literally shocking to the conscience." *Gottlieb*, 272 F.3d at 175 (citing *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). Additionally, courts have held that "mere allegations of verbal abuse do not present actionable claims under § 1983." *F.H. v. Shelby Cnty. Schs.*, No. 2:12-cv-02312-JTF-cgc, 2016 WL 10637102, at *9 (W.D. Tenn. Dec. 30, 2016) (citing *Bender v. Brumley*, 1 F.2d 271, 274 n.4 (5th Cir. 1003); *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000)). The Sixth Circuit has also recognized that "verbal abuse is normally not a constitutional violation." *Taylor v. City of Falmouth*, 187 F. App'x 596, 600 (6th Cir. 2006).

Taking all the *Gottlieb* factors into consideration, they do not weigh in Plaintiffs' favor. While the Court does not condone Ryan's actions, Ryan's actions fall short of "brutal" or "inhumane" that would rise to the level of a constitutional violation. Therefore, the Court finds that Plaintiffs do not allege facts sufficient to state a substantive due process claim.

### 2. ADA and RA (Counts II & III)

Analysis of claims under the ADA and the RA is generally the same as "the remedies, procedures, and rights available under Title II of the ADA parallel those available under the Rehabilitation Act." *Carpenter-Barker v. Ohio Dep't of Medicaid*, 752 F. App'x 215, 219 (6th Cir. 2018). Under either of these statutes, a plaintiff must establish that "(1) she has a disability;

11

(2) she is otherwise qualified; and (3) she was being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Section 504 of the Rehabilitation Act requires an additional showing that "the discrimination must be 'solely' because of the disability," *Fritz v. Michigan*, 747 F. App'x 402, 404 (6th Cir. 2018), and that the defendant receives federal funds, *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997).

Plaintiffs plead that the child was excluded from access to education and from access to transportation services. As discussed above, access to education and transportation arguably require IDEA exhaustion. However, even without exhaustion, Plaintiffs have failed to plead ADA and RA claims because they have not pled any facts sufficient to show that the child was subject to discrimination because of her disability. In fact, Plaintiffs state, "Ms. Ryan acknowledged that she treats the normal kids the same as the disabled kids[.]" (Response to Defs.' Mot. to Dismiss, PageID.392.) Further, there were other disabled children on the bus who did not experience any alleged abuse. Plaintiffs have not pled facts that would suggest that Ryan treated Plaintiffs' child the way she did *because* of her disability. Therefore, Plaintiffs have failed to state both ADA and RA claims.

### 3. *Monell* Liability for Failure to Train or Supervise (Count IV)

Under § 1983, a municipality may be liable for the violation of a plaintiff's constitutional rights if a "custom, policy or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights." *Gohl*, 836 F.3d at 685 (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Because Plaintiffs have not stated a claim for violation of constitutional rights, there is no basis for holding the school district and the other supervisory

defendants liable. *Id.* ("[W]e need not examine the customs, policies, or practices of the school district if no constitutional violation occurred."); *see also Domingo*, 810 F.3d at 416.

Even if Plaintiffs had stated a substantive due process claim for Ryan's actions, EUPISD could not be held liable. To establish a "failure to train" claim, Plaintiffs must show "(1) a clear and persistent pattern of illegal activity, (2) which the City knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the City's custom was the cause of the deprivation of her constitutional rights." *Osberry v. Slusher,* 750 F. App'x 385, 389 (6th Cir. 2018) (citing *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (internal quotation marks omitted)). Plaintiffs point to one previous incident of misconduct by Ryan, of which all defendants were allegedly aware, and another complaint against Ryan from a child's mother, but the one incident and the other complaint are not a "clear and persistent pattern of illegal activity." *Id.* Further, though Plaintiffs do not describe what occurred in that incident,[4] it appears that supervisors reprimanded Ryan for her behavior. (2d Am. Compl. ¶¶ 24-25.) This is not a showing of deliberate indifference. Therefore, Plaintiffs have not stated a claim for *Monell* liability against EUPISD.

Similarly, the supervisory defendants could not be held liable in their individual capacities. "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011).

> Section 1983 liability . . . cannot be premised solely on a theory of *respondeat superior*, or the right to control employees. Supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a

---

[4] Plaintiffs attach the transcript of a police interview and an affidavit to their response that describe this incident and complaint. However, these materials are not properly before the Court on a motion to dismiss. In any case, the result is the same as the conduct described would not rise to the level of constitutional violations to support a "pattern of illegal activity."

> plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id.* (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)). At most, Plaintiffs have alleged that the supervisory defendants were aware of a previous incident of misconduct by Ryan for which she was reprimanded, but Plaintiffs have not alleged facts suggesting that the supervisory defendants authorized, approved, or acquiesced to Ryan's misconduct, much less participated or encouraged it. *See Lillard*, 76 F.3d at 728 ("[S]imply having some incidents of harassment brought to the attention of supervisory defendants is not sufficient to make them liable under section 1983."). Therefore, Plaintiffs have not stated a claim for supervisory liability.

### C. State Law Claims (Counts V - VIII)

The Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. "The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary and depends on judicial economy, convenience, fairness, and comity." *Shefke as N/F of Doe v. Macomb Intermediate Sch. Dist.*, No. 20-cv-10049, 2020 WL 4816202, at *5 (E.D. Mich. Aug. 19, 2020) (citing *Carlsbad Tech., Inc. v. HIF Bio., Inc.*, 556 U.S. 635, 639 (2009); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)). "[A] federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues "substantially predominate" over the federal issues in terms of proof, scope, or comprehensiveness of the remedy sought." *Bodenner v. Graves*, 828 F. Supp. 516, 518 (W.D. Mich. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, all the federal claims against every defendant except Ryan will be dismissed. The only remaining federal claim is a § 1983 claim against Ryan, and that claim is unlikely to succeed for reasons discussed above. The state law claims will either require elements of proof distinct from this

§ 1983 claim, or they will cause a substantial expansion of the suit beyond that necessary and relevant to the federal claim. *See Shefke*, 2020 WL 4816202, at *5.

## IV. CONCLUSION

For the reasons stated, the Court will grant the Defendants' motion to dismiss. An order will enter consistent with this opinion.

Dated: March 31, 2022 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE